**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| G.P., an individual,<br>Plaintiff,<br><br>v.<br><br>WYNDHAM HOTELS & RESORTS, INC.; et al.,<br><br>Defendants. | Case No. 2:22-cv-02682-ALM-KAJ<br><br>Judge Algenon L. Marbley<br><br>Magistrate Judge Kimberly A. Jolson |

**DEFENDANTS WYNDHAM HOTELS & RESORTS, INC., SUPER 8 WORLDWIDE, INC., AND TRAVELODGE HOTELS, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Defendants Wyndham Hotels & Resorts, Inc. ("WHR"), Super 8 Worldwide, Inc., and Travelodge Hotels, Inc. (collectively, the "Wyndham Defendants") respectfully submit this Memorandum in Opposition to Plaintiff's Motion and Incorporated Memorandum to Compel (ECF No. 224, "Motion" or "Mot."). The Motion seeks to force the Wyndham Defendants to restart document discovery and ignores the outcome of the extensive meet and confer process reflected in the Parties' Joint Status Report dated March 20, 2026 (the "March Joint Status Report") because the Wyndham Defendants did not produce in this case three (3) documents that they produced in *C.C. v. Wyndham Hotels & Resorts, Inc.*, *et al.*, No. 2:22-cv-03799 (S.D. Ohio). More specifically, Plaintiff seeks to compel the Wyndham Defendants to collect and review documents relating to "corporate knowledge of sex trafficking" using Plaintiff's search terms because Plaintiff believes those search terms may capture additional responsive documents. Plaintiff's Motion offers no basis to suggest that the Wyndham Defendants have not appropriately responded to discovery and should be denied.

## I. INTRODUCTION

Plaintiff filed this action in 2022, alleging she was trafficked between 2013 and 2015 at various hotels, including, as to her claims against the Wyndham Defendants, the Glensprings Super 8®, the Dowlin Travelodge®, and the Central Travelodge® in Cincinnati, Ohio. Each facility was operated by a franchisee pursuant to a franchise agreement with the franchisor of the respective brand. The Wyndham Defendants responded to Plaintiff's First Requests for Production of Documents in December 2024 and produced responsive documents in July 2025. In November 2025, Plaintiff suggested that the Wyndham Defendants' production was incomplete and demanded that the Wyndham Defendants collect and produce documents based on Plaintiff's list of custodians and search terms. Plaintiff then raised the dispute with the Court, which ordered the parties to meet and confer and provide a joint status report reflecting their progress and any areas where they remained at an impasse. Following seven separate meetings addressing Plaintiff's perceived deficiencies, the parties submitted the March Joint Status Report. The Wyndham Defendants also supplemented their written discovery responses and produced additional documents in April 2026.

Plaintiff's Motion ignores these prior efforts and asks the Court to order the Wyndham Defendants to collect and review documents based on Plaintiff's search terms for the period of 2008 to the present, ten years more than what Plaintiff asked for in her First Requests for Production. The Court should deny the Motion because, among other reasons, Plaintiff should not be permitted to expand the date range and dictate the method by which the Wyndham Defendants respond to discovery long after the Wyndham Defendants responded and without any showing that the Wyndham Defendants production was incomplete. A producing party designs its own collection criteria based on the discovery Plaintiff served. Plaintiff cannot substitute her preferred approach without first demonstrating that the Wyndham Defendants' production was manifestly

unreasonable or the production is deficient. Plaintiff shows neither. Plaintiff does not even reference the March Joint Status Report, nor does she point to a single request for production to which the Wyndham Defendants failed to respond or to which Plaintiff believes the Wyndham Defendants response or production was incomplete. Rather, Plaintiff relies on three documents that the Wyndham Defendants produced in *C.C.* but not in this case. Plaintiff's counsel obviously has those documents, and the Wyndham Defendants will immediately produce them. The four other documents that were produced in this case were not produced in *C.C.* because they fall within the 2013 to 2015 period alleged here rather than the May to August 2015 period alleged in *C.C.*

## II. RELEVANT BACKGROUND

Plaintiff alleges she was trafficked between 2013 and 2015 at hotels in the Cincinnati area, including (as to the Wyndham Defendants) the Glensprings Super 8®, the Dowlin Travelodge®, and the Central Travelodge® in Cincinnati, Ohio (the "Facilities"). Third Am. Compl. ¶¶ 28, 49, ECF No. 185 at PageID 1526, 1531–32. Plaintiff served her First Requests for Production on October 15, 2024, and the Wyndham Defendants served their Responses and Objections in December 2024 ("WHR R&Os"). Joint Discovery Timeline, ECF No. 222 at PageID 1654. In its responses, the Wyndham Defendants specifically objected to (among other things) Plaintiff's definition of the "Relevant time period" because it sought documents from five years before and one year after the alleged trafficking period, i.e., a period of ten years. Ex. 1 (WHR R&Os) at 4.

Subject to their objections, the Wyndham Defendants specified what they would produce. Plaintiff did not raise any issues with the Wyndham Defendants' responses until November 18, 2025, at which point Plaintiff sent the Wyndham Defendants a "discovery coordination plan" in which Plaintiff proposed, for the first time, her preferred custodians and search terms. ECF No. 222 at PageID 1654; Mot. at 3, PageID 1665. The plan demanded that the Wyndham Defendants run Plaintiff's terms across various custodians "from 2008 to the present" (i.e., a period of eighteen

years), despite the fact that Plaintiff's First Requests for Production sought documents spanning ten years. Plaintiff also demanded that the Wyndham Defendants produce "universal discovery" across at least six cases involving Plaintiff's counsel. ECF No. 224-8 at PageID 1787.[1]

On February 4, 2026, the Court issued an Order stating that "Plaintiffs do not identify specific discovery deficiencies in any of the six cases at issue" and requiring the parties to meet and confer "regarding Defendant WHR's purported discovery deficiencies in each case." ECF No. 138 at PageID 1327. Plaintiff then sent a letter to the Wyndham Defendants listing alleged deficiencies. Ex. 3 (Feb. 5, 2026 Letter) at 1. The Wyndham Defendants suggested that the parties address the issues "in the context of particular discovery requests while being mindful of burden and proportionality." Ex. 4 (Feb. 17, 2026 Letter). The parties met and conferred seven separate times between February 23 and March 4, 2026 and discussed each disputed request. Mot. at 4, PageID 1666; Ex. 2 (March Joint Status Report) at 2. As set forth in the March Joint Status Report, the Wyndham Defendants agreed to supplement their document production by, among other things, expanding the date range, including hotels other than the specific Facilities at issue, including brand standards for domestic Super 8® and Travelodge® franchisees from 2008 to 2016, including human trafficking awareness training made available from 2012 to 2016, including communications regarding the ECPAT Code and with AAHOA regarding trafficking from 2012 to 2016, and including guest complaints for domestic Super 8® and Travelodge® facilities from 2008 to 2016. *Id.* at 6–7, 9, 15–17. Plaintiff stated that this supplementation of the ECPAT, Polaris, and trade-association requests "would satisfy" each of them. *Id.* at 16–17. The Wyndham Defendants also supplemented their responses to Plaintiff's interrogatories to identify, among

[1] The Court had earlier advised that "Plaintiffs need to accept that they will be litigating these cases on an individual basis, which is how Plaintiffs chose to file them," and that it "will not tinker with the parties' individual discovery requests." ECF No. 116 at PageID 1234–35.

other information, individuals "believed to have been involved in supervising the procurement and/or presentation of human trafficking awareness training between 2012 and 2016," Ex. 5 (the Wyndham Defendants' Suppl. R&Os to Pl.'s Interrog., dated Apr. 15, 2026) at 5, and the Wyndham Defendants made further document productions on January 30, April 20, and April 28, 2026.

Plaintiff did not raise any discovery issues following the Wyndham Defendants' supplemental production. Rather, after the parties were unsuccessful in mediation with Judge Kemp in October 2026, Plaintiff raised the issue of discovery in the parties' November 2026 status report, ECF No. 217 at 1, 3, PageID 1643, 1645, and the Court entered an Order requiring Plaintiff to file the Motion. ECF No. 219 at PageID 1649. The Motion is limited to Plaintiff's First Requests for Production, again without reference to any particular requests, and asks the Court to compel discovery of what the Wyndham Defendants "knew generally about human trafficking," to compel the Wyndham Defendants "to use agreed upon search terms" on corporate files, and to compel the Wyndham Defendants "to identify the custodians' files that were searched." Mot. at 10, PageID 1672. To support Plaintiff's contention that the Wyndham Defendants' responses remain deficient, Plaintiff points to four documents that the Wyndham Defendants produced in this case (Ex. M) and to three documents produced in *C.C.* but not in this case (Ex. N). *Id.* at PageID 1670–71. As noted, the alleged trafficking periods in the two cases are different (three years in *G.P.* and four months in *C.C.*). Remarkably, Plaintiff's Motion does not cite to the March Joint Status Report, it does not point to any particular request for production, and it does not identify any objection by the Wyndham Defendants that it asks the Court to overrule. Simply, the Motion ignores the long history that precedes it and essentially demands that document discovery begin anew.

## III. ARGUMENTS AND AUTHORITIES

### A. The Wyndham Defendants are Entitled to Design a Reasonable Document Search Tailored to this Case.

Without conceding any of their legal arguments regarding relevance under the TVPRA, the Wyndham Defendants acknowledge that Plaintiff may pursue discovery as to what was known about trafficking.[2] Plaintiff's Motion, however, seeks to dictate the method by which the Wyndham Defendants respond to her First Requests for Production without first establishing that the Wyndham Defendants production was somehow deficient.

Courts have recognized that "the producing party is 'in the best position to determine the procedures, methodologies, and technologies appropriate for producing [its] own ESI.'" *Allergan, Inc. v. Revance Therapeutics, Inc.*, No. 3:23-cv-00431, 2025 WL 1013987, at *3 (M.D. Tenn. Feb. 12, 2025) (quoting *MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, No. 2:18-cv-2211 (BRM)(LHG), 2022 WL 20359241, at *13 (D.N.J. Feb. 8, 2022) (and collecting cases)); 19 Sedona Conf. J. 1 at 118 (Principle 6)(2018). Indeed, the "producing party has the right in the first instance to decide how it will produce its documents." *MSP Recovery Claims, Series, LLC*, 2022 WL 20359241, at *13 (quoting *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 337 F.R.D. 610, 617 (D.N.J. 2020)). For that reason, the "district court should generally not play a role in dictating the design of a search, choosing search tools, selecting search terms, or designating custodians." *Commins v. NES Rentals Holdings, Inc.*, No. 3:16CV-00608-GNS, 2018 WL 3186983, at *3 (W.D. Ky. June 28, 2018); *see also Allergan, Inc.*, 2025 WL 1013987, at *3 (same). Rather, a "presumption exists in favor of the producing party's selected search terms and custodians, which the requesting party can overcome only by proving that those selections are

---

[2] The Wyndham Defendants maintain that the TVPRA requires actual or constructive knowledge of the specific venture that is alleged to have trafficked the Plaintiff, and that the TVPRA does not require "reasonable diligence" or a duty to prevent trafficking. Mot. at 2, PageID 1664.

'manifestly unreasonable or . . . the resulting production is deficient.'" *Allergan, Inc.*, 2025 WL 1013987, at *3 (quoting *Commins*, 2018 WL 3186983, at *3). The "burden appropriately lies with the requesting party to show that the responding party's [ESI] search was inadequate." *Id.* (citing *Enslin v. Coca-Cola Co.*, No. 2:14-cv-06476, 2016 WL 7042206, at *2 (E.D. Pa. June 8, 2016)).

In *Little Hocking Water Ass'n*, this Court found that the producing party was best positioned to identify the likely sources of responsive documents and declined to expand the search to additional custodians on the requesting party's "opinion" and "suspicion." *Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*, No. 2:09-cv-1081, 2013 WL 608154, at *10 (S.D. Ohio Feb. 19, 2013). The Sixth Circuit, applying the Sedona Principles, has also recognized that litigants are primarily responsible for their own electronically stored information and that "mere skepticism" that an opponent has not produced everything does not warrant intrusive measures. *John B. v. Goetz*, 531 F.3d 448, 459–60 (6th Cir. 2008). The same principles govern custodian choices. The party seeking to add a custodian must show that the custodian's files likely contain relevant information, and "[m]ere speculation that an individual's high-ranking position within an organization might increase the relevance of that individual's files is not a basis for designating that individual as a custodian." *Houston v. Papa John's Int'l, Inc.*, No. 3:18-cv-00825-CHB, 2020 WL 6588505, at *2 (W.D. Ky. Oct. 30, 2020).

The Wyndham Defendants responded to Plaintiff's First Requests for Production in December 2024 and produced documents thereafter. The Wyndham Defendants' responses and production make clear that they did not confine the issue of so-called "corporate knowledge" to the Facilities or to the period of Plaintiff's alleged trafficking. For example, the Wyndham Defendants' production includes corporate emails from 2013 to 2015, brand-wide materials such as Super 8® and Travelodge® brand standards, franchise disclosure documents, human trafficking

awareness training, and communications with Polaris, a subject matter expert that prepared and presented that training. Of course, Plaintiff's counsel has received document productions from the Wyndham Defendants in many cases pending in this Court, and the production of "corporate knowledge" documents in this case generally follows prior cases.[3] Plaintiff's Motion does not suggest otherwise beyond the three documents that were produced in *C.C.* but not in this case. That said, the Wyndham Defendants are willing to share their list of search terms and custodians with the Court *in camera*.

Plaintiff's Motion fails to identify any response to Plaintiff's First Requests for Production that she believes to be deficient, nor does Plaintiff identify any categories of documents that she believes are missing. *See infra* Section III.B. Rather, four years into this case, Plaintiff seeks to impose counsel's preferred search terms because they were negotiated with other defendants in other cases. Mot. at 6–7, 9, PageID 1668–69, 1671. That other parties in other cases agreed to a particular protocol does not make a different, reasonable protocol deficient.[4]

---

[3] *Little Hocking* approved of a similar approach. It held that it was "not unreasonable and was less burdensome for DuPont to rely on its prior searches and documents previously produced in related litigation," and DuPont "reasonably relied on its experience and searches in broader . . . litigation" in selecting custodians. 2013 WL 608154, at *6, *9.

[4] Plaintiff relies on *In re Porsche Cars North America, Inc.*, No. 2:11-md-2233, 2012 WL 4361430 (S.D. Ohio Sept. 25, 2012). Mot. at 7–9, PageID 1669-71. In that case, the court ordered disclosure where the producing party had asserted a boilerplate burden objection, applied undisclosed definitions of disputed terms, and produced a total of fifteen emails. *See* 2012 WL 4361430, at *6–7. None of those circumstances are present here. The Wyndham Defendants have produced 1,144 documents related to "corporate knowledge." *See infra* Section III.B. Plaintiff also cites *Burus v. Wellpoint Cos.*, 434 F. App'x 475 (6th Cir. 2011), but that case does not support her argument. Mot. at 7 n.15, PageID 1669. In *Burus*, the producing party conceded it had not finished responding to a request it had agreed to answer, which reached more than 60,000 emails. *Id.* at 478. The magistrate judge set search terms and a date limit to make that agreed production "more manageable," then denied the plaintiff's renewed motion to compel because the producing party was making a good-faith effort to complete it. *Id.* at 478-79. The Sixth Circuit held only that those rulings were not an abuse of discretion. *Id.* at 479. *Burus* did not impose the requesting party's terms or custodians.

The custodian disclosures and negotiated terms Plaintiff points to in *M.A.* and *S.C.* required the parties to confer on custodians and search terms and required disclosure of "the Custodians most likely to possess responsive ESI." Orders Regarding Discovery of ESI, ECF No. 163-2 at § IX, *M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-cv-849 (S.D. Ohio Nov. 21, 2019); ECF No. 153 § X, *S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-cv-871 (N.D. Ohio Dec. 4, 2023). The custodian ruling in *H.H.* enforced such an order. *H.H. v. G6 Hosp., LLC*, No. 2:19-cv-755, 2021 WL 1711297, at *8–9 (S.D. Ohio Apr. 30, 2021). There is no ESI order in this case. Nor did *A.S.*, a case from the Southern District of Texas, impose a TVPRA protocol. *Doe (A.S.) v. Wyndham Hotels & Resorts, Inc.*, No. 4:23-cv-01969 (S.D. Tex.). Plaintiff argues that Exhibit C to her Motion includes an order "granting in full" the motion to compel in *A.S.* Mot. at 1 n.2, PageID 1663. But Exhibit C contains only the *A.S.* plaintiff's unsigned proposed order, which would have required production "based off the search terms identified by Plaintiff" and "from the custodian files of the custodians identified by Plaintiff." ECF No. 224-4 at PageID 1774–75. The order the *A.S.* court entered omitted those provisions. Rather, it simply ordered the production of six categories of documents and left the method of search to the parties. *See* Order on Pl.'s Mot. to Compel, ECF No. 57, *Doe (A.S.) v. Wyndham Hotels & Resorts, Inc.*, No. 4:23-cv-01969 (S.D. Tex. Oct. 8, 2024) (Ex. 6).

### B. Plaintiff Has Not Shown That the Wyndham Defendant's Production Is Deficient.

A party moving to compel bears the burden of showing that a production is deficient. *See Allergan*, 2025 WL 1013987, at *3 ("burden appropriately lies with the requesting party to show that the responding party's [ESI] search was inadequate"). Speculation that more documents exist does not carry that burden. *See Little Hocking*, 2013 WL 608154, at *23 (court will not presume that more documents exist because the movant is "surprised by the alleged dearth of responsive

documents"); *Davis v. Am. Highwall Mining, LLC*, 570 F. Supp. 3d 491, 497 (E.D. Ky. 2020) ("The Court cannot compel production of documents that AHM insists do not exist based solely on Davis's contrary speculation.").

Plaintiff attempts to show that the Wyndham Defendant's production is deficient solely by reference to the Wyndham Defendant's production in this case as compared to the production in *C.C.* Mot. at 8-9, PageID 1670–71. As noted, after focusing on the issue for more than a year, Plaintiff identified four documents that the Wyndham Defendants produced in this case but not in *C.C.*, and three documents that the Wyndham Defendants produced in *C.C.* but not in this case. Neither set shows that the Wyndham Defendant's search in this case was deficient:

**Exhibit M.** Plaintiff's four *G.P.* documents are dated April 22, 2015, October 9, 2015, November 12, 2015, and December 17, 2015. WHR.GP.SDOH_0001002 (Apr. 22, 2015); WHR.GP.SDOH_0000657 (Oct. 9, 2015); WHR.GP.SDOH_0000678 (Nov. 12, 2015); WHR.GP.SDOH_0000158 (Dec. 17, 2015). In *C.C.*, the plaintiff alleged trafficking between May and August 2015. Each of the four documents in Exhibit M falls inside the 2013–2015 period alleged here, and the Wyndham Defendants produced each of them in this case. Each document falls outside the May–August 2015 period at issue in *C.C.* The documents show that the Wyndham Defendants produced what they said they would produce. The documents do not show that the Wyndham Defendant's search in this case failed.[5]

**Exhibit N.** Plaintiff's Exhibit N documents were produced in *C.C.* Three documents fall within the period alleged here: WHR.CC.SDOH_0000503 (May 26, 2015);

[5]The Polaris and AHLA documents that Plaintiff describes are the subject of RFP Nos. 19 and 20. As to RFP No. 19, Plaintiff stated in the March Joint Status Report that the Wyndham Defendant's supplementation "would satisfy this Request." Ex. 2 at 16. To the extent any document reflecting training made available to franchisees between 2012 and 2016 has not been produced, the Wyndham Defendants will produce them.

WHR.CC.SDOH_0000166 (July 21, 2015); WHR.CC.SDOH_0000427 (July 22, 2015).[6] The Wyndham Defendants will produce those three documents in this case. Three documents do not show that a search is deficient. Of the 704 documents the Wyndham Defendants produced in *C.C.*, 582 were also produced here. The Wyndham Defendants' search here captured all three emails, but they were coded not responsive in review. Exhibit N shows, at most, a review call on three documents, not a flaw in the search, and the Wyndham Defendants will produce them. *See Enslin*, 2016 WL 7042206, at *3 (no "standard of perfection"). That is supplementation under Rule 26(e), not evidence of an inadequate search. *See Billiards & Brews, LLC v. City of Knoxville*, No. 3:23-CV-181-CLC-DCP, 2026 WL 2607972, at *6 (E.D. Tenn. Sept. 3, 2026) (denying motion to compel and finding no Rule 26(g) violation where producing party supplemented before the discovery deadline); *Taylor v. Union Inst.*, 30 F. App'x 443, 451 (6th Cir. 2002) ("The default rule is, however, that a party has a duty to supplement her discovery response if she learns that her response 'is in some material respect incomplete or incorrect.'" (quoting Fed. R. Civ. P. 26(e)(2))). To be sure, had Plaintiff raised these documents with counsel prior to filing this motion, the Wyndham Defendants would have readily produced them.

**The Wyndham Defendant's Production.** Plaintiff's exhibits must also be measured against what the Wyndham Defendants have produced. Plaintiff served thirty requests for production. Ex. 1. In response, the Wyndham Defendants produced 1,384 documents totaling 23,006 pages, including the franchise agreements and related contracts for the Facilities, the Super 8® and Travelodge® brand standards and franchise disclosure documents, the franchisees' insurance policies, fee and payment records, quality assurance inspection reports, the franchisees'

[6] Plaintiff's exhibit list also identifies WHR.CC.SDOH_00001431. ECF No. 224-1 at PageID 1674. The Wyndham Defendants have not produced a document bearing that Bates number in *C.C.*

site contact information and training history, guest communications, and press releases. *Id.* (WHR's R&Os to RFP Nos. 8, 10, 21–26, 28, 30). As to "corporate knowledge," the Wyndham Defendant's productions included 1,144 documents, including family members, reflecting communications about human trafficking, including 748 documents concerning Polaris, 486 concerning ECPAT and The Code, 284 concerning AHLA and AAHOA, and 31 documents concerning human trafficking awareness training materials made available to Super 8® and Travelodge® franchisees. *Id.*; *see, e.g.*, WHR.GP.SDOH_0001441 (Aug. 2013 human trafficking training presentation); WHR.GP.SDOH_0015411 (Nov. 2014 announcement of Polaris partnership); WHR.GP.SDOH_0000120 (June 2015 human trafficking training presentation); WHR.GP.SDOH_0015922 (Jan. 2016 human trafficking training presentation). Plaintiff's Motion does not address this production, and the Motion offers nothing to suggest that the Wyndham Defendants failed to conduct "a reasonable search for responsive information pursuant to a 'reasonably comprehensive search strategy'" as required by the Federal Rules of Civil Procedure. *Enslin*, 2016 WL 7042206, at *3. A handful of documents produced in one case but not the other does not show that a production of this scope is deficient. *See id.* (no "standard of perfection").

### C. A New, Corporate-Wide Search on Plaintiff's Terms is Not Proportional to the Needs of this Case.

Discovery must be "proportional to the needs of the case," considering, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to "go fishing"' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citation omitted).

Plaintiff seeks a search of custodial files "from 2008 to the present" to produce "universal discovery" across cases. Mot. at 3 n.6, PageID 1665, Ex. G at PageID 1787. Plaintiff's own First Requests for Production, however, defined the relevant period as 2008 to 2017. Ex. 1 at 4. The Wyndham Defendants objected to that period, and Plaintiff's proposal now runs nearly a decade beyond it. Plaintiff also seeks to expand the subject matter of her First Requests for Production. The Motion challenges the Wyndham Defendant's production of "corporate knowledge" documents. *See supra* Section III.B. As a remedy, however, Plaintiff seeks to substitute her preferred list of custodians and search terms, and to impose those search parameters across every case in which her counsel is involved. The Wyndham Defendants respectfully submit that such relief—universal terms, universal custodians, and a single production for all cases—stands at odds with the Court's direction that these cases proceed individually. ECF No. 116 at 4-5, PageID 1234–35; ECF No. 138 at PageID 1327.[7]

## IV. CONCLUSION

For the foregoing reasons, the Wyndham Defendants respectfully request that the Court deny Plaintiff's Motion and Incorporated Memorandum to Compel, or, alternatively, limit any relief to *in camera* review of the Wyndham Defendant's search terms and custodians.

Dated: November 25, 2026

Respectfully submitted,

By: */s/ Michael R. Reed*
Michael R. Reed (0063995), Trial Attorney
**HAHN LOESER & PARKS, LLP**
65 East State Street, Suite 2500
Columbus, Ohio 43215
Tel.: (614) 233-5165
Email: mreed@hahnlaw.com

[7] As noted, the Wyndham Defendants will provide the Court with a description of their search criteria for *in camera* review.

David S. Sager (admitted *pro hac vice*)
Marc A. Silverman (*pro hac vice forthcoming*)
Daniel J. Lynch (*pro hac vice forthcoming*)
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Tel.: (973) 520-2550
Email: david.sager@us.dlapiper.com
Email: marc.silverman@us.dlapiper.com
Email: dan.lynch@us.dlapiper.com

Darryl L. Tarver (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
650 S. Exeter Street, Suite 1100
Baltimore, Maryland 21202-4576
Tel.: (410) 580-4123
Email: darryl.tarver@us.dlapiper.com

*Counsel for Defendants Wyndham Hotels & Resorts, Inc., Super 8 Worldwide, Inc., and Travelodge Hotels, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2026, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

*/s/ Michael R. Reed*
Michael R. Reed (0063995)